Filed 11/28/18 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CONSTANCE RAMOS, | A153390 |
| Petitioner, | |
| v. | (San Francisco City & County Super. Ct. No. CGC-17-561025) |
| THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, | ORDER MODIFYING OPINION |
| Respondent; | |
| WINSTON & STRAWN, LLP, | NO CHANGE IN JUDGMENT |
| Real Party in Interest. | |

THE COURT:

It is ordered that the opinion filed herein on November 2, 2018, be modified as follows:

1. On page 2, at the end of the first full paragraph, replace the last sentence that begins "Accordingly, we reverse and remand . . ." with the following sentence:

> Accordingly, we grant the petition for writ of mandate to allow Ramos to proceed with her claims in superior court.

There is no change in the judgment.

Dated:

_____
Margulies, Acting P.J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CONSTANCE RAMOS,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,<br><br>     Respondent;<br><br>WINSTON & STRAWN, LLP,<br><br>     Real Party in Interest. | A153390<br><br>(San Francisco County<br>Super. Ct. No. CGC-17-561025) |

Constance Ramos, an experienced litigator and patent practitioner with a doctorate in biophysics, was hired as an "Income Partner" at the law firm Winston & Strawn, LLP (Winston). After allegedly being denied recognition for her work, excluded from opportunities for career advancement, evaluated based on the success of her male colleagues, and denied compensation and bonuses to which she was entitled, Ramos sued Winston, asserting various causes of action under state law for discrimination, retaliation, wrongful termination, and anti-fair-pay practices.

Winston moved to compel arbitration pursuant to the partnership agreement Ramos signed shortly after joining the firm. In opposing the motion, Ramos argued she was an "employee" of Winston, not a partner, and therefore *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*) applied to the arbitration agreement. Ramos further argued the arbitration provision in the partnership agreement failed to meet the minimum requirements set forth in *Armendariz* for arbitration of unwaivable statutory claims. The trial court disagreed, finding Ramos was

"in a partnership relationship" for purposes of the motion to compel. The trial court severed provisions of the arbitration agreement related to venue and cost-sharing, and granted Winston's motion. Ramos sought a writ of mandate, and we granted review.

We conclude the trial court erred in compelling Ramos to submit her claims to arbitration. Under the framework set forth by our Supreme Court in *Armendariz*, we find the parties' arbitration agreement is unconscionable. Further, because we cannot remove the taint of illegality by severing the unlawful provisions without altering the nature of the parties' agreement, we must void the entire agreement to arbitrate. Accordingly, we reverse and remand for Ramos to proceed with her claims in superior court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ramos filed her complaint asserting various causes of action against Winston for sex discrimination, retaliation, violation of California's Equal Pay Act (Lab. Code, § 1197.5), and wrongful termination in violation of public policy. The following facts are taken from the allegations of the complaint and declarations filed in support of and opposition to Winston's motion to compel arbitration.

Ramos was hired in May 2014 as an income partner[1] in Winston's intellectual property practice group. In addition to her law degree, Ramos holds a bachelor's degree in physics and computer science and a doctorate in biophysics. She is a registered patent practitioner and has been admitted as a solicitor in the United Kingdom. Ramos was the only partner in Winston's Northern California offices with these advanced degrees. When she started at Winston, Ramos had an established career in intellectual property law, having previously worked as a partner at two other law firms, Hogan Lovells US LLP (Hogan Lovells) and Howrey LLP.

Shortly after she began work, Ramos was provided with and signed a copy of the firm's partnership agreement (Partnership Agreement), which contained an arbitration clause. Section 13.11 of the Partnership Agreement, on "Arbitration," provides: "Any

---

[1] Winston maintained two classes of partners, "Income Partners" and "Capital Partners."

2

dispute or controversy of a Partner or Partners arising under or related to this Agreement . . . or the Partnership, shall be resolved first by mandatory, but non-binding, mediation . . . . If such dispute is not resolved within 60 days after referral to the selected mediator, either party may submit the dispute to binding arbitration before a panel of three arbitrators for resolution under the Commercial Arbitration Rules of the American Arbitration Association, as then in effect . . . ." The arbitration clause further states that, for partners residing in the United States, the venue for any mediation or arbitration shall be Chicago, Illinois. It outlines procedures for the selection of a three-person arbitration panel, comprised of individuals who are partners in law firms headquartered in the United States having not less than 500 lawyers. The arbitration clause also provides, "Each party shall bear its own legal fees," and "Except to the extent necessary to enter judgment on any arbitral award, all aspects of the arbitration shall be maintained by the parties and the arbitrators in strict confidence." The final sentence of section 13.11 states: "The panel of arbitrators shall have no authority to add to, detract from or otherwise modify this Agreement nor will the panel of arbitrators have authority to substitute its judgment for, or otherwise override the determinations of, the Partnership, or the Executive Committee or officers authorized to act in its behalf, with respect to any determination made or action committed to by such parties, unless such action or determination violates a provision of this Agreement."

Ramos arrived at Winston with two other attorneys, Korula "Sunny" Cherian and Scott Wales, both men with whom she had worked at the Hogan Lovells firm. After she began work, Ramos sought to take advantage of Winston's "Lateral Partner Integration Program," which was supposed to help her develop her practice and assist in business development efforts. Her efforts to pursue integration activities and matters with firm management, however, were rebuffed. Firm leaders showed little interest in her business development or her efforts to contribute to the firm's intellectual property work.

In January 2016, after Cherian and Wales had both left Winston, the office managing partner told Ramos that Winston wanted her to leave. Ramos was directed to immediately stop working on any billing matter and was told the firm would give her six

months to search for other employment. Though she had experienced almost a complete victory on the active litigation matter she brought over to Winston with Cherian, and was the highest billing income partner in the San Francisco office in 2016, she received no bonus for 2016. A short time later the firm managing partner told her if she did not file a withdrawal letter by March 5, the compensation committee would substantially reduce her salary. When she did not do so, the compensation committee cut her salary by 33 percent.

Over the course of the rest of the year, Ramos continued her efforts to generate business and work on client origination and proliferation. Despite her efforts and qualifications, she was left out of pitch meetings and left off cases in favor of less-qualified, less-experienced male attorneys. She also complained repeatedly to firm management that she felt she was being treated differently based on her gender and that her career at Winston was being tied to whether or not certain male partners remained with the firm.

As a result of being told to stop billing in early 2016, being forced to withdraw from the litigation matter, and being denied opportunities to develop new business, Ramos had low billings in the following year. In early 2017, the compensation committee cut her salary again. By that point, Ramos had experienced a 56 percent reduction in pay from her original compensation with the firm.

In July 2017, Ramos submitted a letter of resignation under protest to the firm, summarizing her experiences to "explain why no reasonable attorney would be able to stay at Winston under these hostile circumstances." The same month, she filed a complaint of discrimination with the California Department of Fair Employment and Housing (DFEH) and received a right-to-sue letter. Her lawsuit followed.

Winston moved to compel arbitration of Ramos's claims pursuant to the Partnership Agreement she signed upon joining Winston. In its motion to compel, Winston argued Ramos had voluntarily agreed to arbitration, her claims came within the scope of the arbitration clause, and because she was a "partner," not an "employee," the requirements for arbitration clauses in mandatory employment agreements outlined in

4

*Armendariz* did not apply. Winston also argued that *Armendariz* was no longer good law, but even if it was, the Partnership Agreement complied with the *Armendariz* requirements. To the extent any provision was unconscionable, Winston argued it should be severed and the remainder of the arbitration agreement should be enforced.

Ramos opposed the motion to compel, asserting her claims were outside the scope of the arbitration agreement because the language of the arbitration clause was limited to disputes about the Partnership Agreement. Ramos further argued that even assuming her claims came within the scope of the agreement, the motion to compel should be denied because she was an "employee" for purposes of antidiscrimination protections afforded by the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) and the Labor Code, Winston's arbitration agreement failed to comply with *Armendariz,* and the arbitration agreement was procedurally and substantively unconscionable.

The trial court granted the motion to compel arbitration. In its order, the court stated: "It is undisputed that the parties agreed to the arbitration agreement. All of the claims alleged by plaintiff Ramos fall within the broad scope of the arbitration clause. For the purpose of this motion, the Court finds that Winston & Strawn LLP and Ms. Ramos had a partnership relationship. However, the Court finds that the provisions related to venue and cost sharing are unconscionable and will be severed from the arbitration agreement. Accordingly, the Court orders that the arbitration shall be held in San Francisco, California, that plaintiff Ramos need only pay those costs that she would have to pay if her claims were litigated in court, and the arbitrator shall have the authority to award attorney fees if plaintiff is the prevailing party and attorney fees are available under her claims." Ramos filed her petition for writ of mandate.

## II. DISCUSSION

### A. *Propriety of Writ Review*

While an order denying a petition to compel arbitration is immediately appealable by statute, an order compelling arbitration is not. (*Zembsch v. Superior Court* (2006) 146 Cal.App.4th 153, 160 (*Zembsch*).) Because we grant writ review of orders

5

compelling arbitration only in " 'unusual circumstances' " or in " 'exceptional situations' " (*ibid.; Roden v. AmerisourceBergen Corp.* (2005) 130 Cal.App.4th 211, 213 ["extraordinary relief is supposed to be extraordinary" and "not available as a matter of course"]), we will address why we have determined writ review is appropriate here before turning to the merits.

For reasons we will explain, we find the arbitration agreement in this case, as applied to Ramos's claims to vindicate her statutory rights and for wrongful termination, is procedurally and substantively unconscionable. As a result, the trial court should not have granted the order compelling arbitration. "[B]ecause we conclude that the trial court order compelling arbitration was improper, 'the expense to the parties in participating in and seeking review of the arbitration is apparent.' " (*Zembsch, supra,* 146 Cal.App.4th at p. 161; see *Medeiros v. Superior Court* (2007) 146 Cal.App.4th 1008, 1014, fn. 7 ["Writ review is the appropriate way to review the challenged order and avoid having parties try a case in a forum where they do not belong, only to have to do it all over again in the appropriate forum."].)

## B. *Scope of the Arbitration Clause*

We first address Ramos's claim the trial court erred in compelling arbitration because the scope of the arbitration clause does not encompass the claims made in her lawsuit.[2] Ramos contends a "fair reading" of the language in the parties' arbitration agreement is that the arbitration procedure is limited to disputes over the adherence to or application of the terms of the Partnership Agreement. Winston argues the language used by the parties is "the broadest, most inclusive language possible and confirms the parties' intent to arbitrate all disputes between them." We believe both parties overstate the strength of their arguments, and the issue is a close one.

---

[2] We note no party has discussed below or on appeal whether the authority to decide if the dispute was subject to arbitration (arbitrability) is to be determined by the arbitrator or the court, so we do not address it. (See, e.g., *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944 [unless the parties' agreement clearly indicates to the contrary, arbitrability is an issue for the court].)

We begin with the principle that under both state and federal law, there is a strong policy favoring arbitration.  (*Armendariz, supra,* 24 Cal.4th at p. 97.)  Any doubts concerning the scope of arbitrable issues will be resolved in favor of arbitration. (*Khalatian v. Prime Time Shuttle, Inc.* (2015) 237 Cal.App.4th 651, 658 (*Khalatian*); *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686 (*Coast Plaza*).)  " ' " 'A heavy presumption weighs the scales in favor of arbitrability; an order directing arbitration should be granted "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage." ' " ' " (*Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 642.)

In deciding whether the parties agreed to arbitrate their dispute, we apply state rules of contract interpretation to evaluate whether the parties objectively intended to submit the issue to arbitration.  (*First Options of Chicago, Inc. v. Kaplan, supra,* 514 U.S. at p. 944; *Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 890.)  "When conflicting extrinsic evidence was not offered below, we apply a de novo, or independent, standard of review on appeal from a trial court's determination of whether an arbitration agreement applies to a particular controversy."  (*Aanderud*, at p. 890.)

The parties' arbitration agreement provides for arbitration of "[a]ny dispute or controversy of a Partner or Partners arising under or related to this Agreement . . . or the Partnership."  As an initial matter, we disagree with Winston's position that this language requires the parties to arbitrate *any* dispute between them.  While the phrase "arising under or related to" is very broad, it is necessarily qualified by what follows: "this Agreement . . . or the Partnership."  Giving the words of the contract their plain meaning, the arbitration clause requires the parties to arbitrate any dispute or controversy "arising under or related to" the Partnership Agreement or the partnership.  (See, e.g., *Rice v. Downs* (2016) 248 Cal.App.4th 175, 187 ["The parties did not simply agree to arbitrate 'any controversy,' effectively meaning every controversy between them.  'Any controversy' is necessarily modified by 'arising out of this Agreement.' "].)

7

The question is whether Ramos's discrimination, retaliation, anti-fair-pay, and related claims "arise under" or "relate to" the partnership or the Partnership Agreement. " '[T]he decision as to whether a contractual arbitration clause covers a particular dispute rests substantially on whether the clause in question is "broad" or "narrow." ' " (*Rice v. Downs, supra,* 248 Cal.App.4th at p. 186.)  Clauses providing for arbitration of disputes "arising from" or "arising out of" an agreement have generally been interpreted to apply only to disputes regarding the interpretation and performance of the agreement. (*Id.* at pp. 186–187; *Elijahjuan v. Superior Court* (2012) 210 Cal.App.4th 15, 20–21 [arbitration provision applicable to any dispute that " 'arises with regard to [the Agreements'] application or interpretation' " did not cover alleged employees' misclassification claims, which were based on Labor Code violations].)  On the other hand, arbitration clauses (like the one in this case) that use the phrase "arising under *or related to*" (italics added) have been construed more broadly.  (See *Larkin v. Williams, Wolley, Cogswell, Nakazawa & Russell* (1999) 76 Cal.App.4th 227, 229–230 [arbitration clause covering " '[a]ny controversy or claim arising out of or relating to any provision of this [partnership] [a]greement or the breach thereof' " covered dispute as to partnership dissolution]; *Dream Theater Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 553, fn. 1 ["*any claim arising out of or relating to* . . . is 'very broad' "]; *Khalatian*, *supra*, 237 Cal.App.4th at pp. 659–660 [arbitration agreement covering " 'any controversy or claim between the parties arising out of or relating to this Agreement' " was broad and covered alleged employees' statutory misclassification claims].)  For a party's claims to come within the scope of such a clause, the factual allegations of the complaint "need only 'touch matters' covered by the contract containing the arbitration clause."  (*Simula, Inc. v. Autoliv, Inc.* (9th Cir. 1999) 175 F.3d 716, 721 [arbitration clause containing phrase " 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract"]; *Rice v. Downs*, at p. 186 [same].)  Further, courts have interpreted agreements with broad arbitration clauses like the one in this case to encompass tort, statutory, and contractual disputes that " ' 'have their roots in the relationship between

8

the parties which was created by the contract." ' " (*Izzi v. Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1315–1316, overruled on other grounds in *Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 250; *Coast Plaza, supra,* 83 Cal.App.4th at p. 686 ["It has long been the rule in California that a broadly worded arbitration clause . . . may extend to tort claims that may arise under or from the contractual relationship."]; *Khalatian, supra,* 237 Cal.App.4th at pp. 659–660 [arbitration clause applying to controversies " 'arising out of or related to' " contract covered statutory wage and hour claims].)

Ramos is correct that none of her claims allege a violation of any term of the Partnership Agreement. However, her allegation that the compensation committee improperly reduced her salary by 56 percent arguably *relates to* the provisions of the Partnership Agreement regarding compensation for income partners, i.e., "Distributive Cash," which generally set forth the procedures for distribution of distributive cash and provide that the executive committee shall determine the amount of compensation for each income partner. It also relates to the partnership in that Ramos was an income partner and alleges she was denied compensation and opportunities by other partners of the firm. In addition, one of the key issues in her lawsuit is whether Ramos is an "employee," and thus entitled to assert statutory claims for sex discrimination, retaliation, wrongful termination, and anti-fair-pay practices. In arguing her employee status, Ramos relies upon numerous provisions of the Partnership Agreement demonstrating her lack of control of the business. Thus, the controversy between the parties appears to "touch matters" covered by the Partnership Agreement. (*Simula, Inc. v. Autoliv, Inc., supra,* 175 F.3d at p. 721.) More significantly, Ramos does not dispute she came to Winston as an "Income Partner," was a member of the partnership, and the Partnership Agreement she signed upon joining the firm was the contract that established her relationship with Winston. Because her statutory claims have their "roots in the relationship" created by the Partnership Agreement, her claims are subject to arbitration. (See *Panepucci v. Honigman Miller Schwartz, Cohn, LLP* (E.D.Mich. 2005) 408 F.Supp.2d 374, 378, 379 [language in partnership agreement compelling arbitration of " 'a controversy or claim

9

arising under or related to' " the partnership agreement was "tantamount to language found to cover statutory claims" in cases where employees agreed to arbitrate claims which " 'arise out of or relate to my employment' "].)

In arguing her claims fall outside the scope of the agreement, Ramos relies heavily on the following provision at the very end of the arbitration clause: "The panel of arbitrators shall have no authority . . . to substitute its judgment for, or otherwise override the determinations of, the Partnership, or the Executive Committee or officers authorized to act on its behalf, with respect to any determination made or action committed to by such parties, unless such action or determination violates a provision of this Agreement." Ramos contends this language means the arbitrators are without power to find in her favor because they will be precluded from examining the mental state of the decision makers and determining whether a given decision or adverse employment action was substantially motivated by an unlawful factor.

As we will discuss further below, the limitation on the panel's authority to "substitute its judgment" or "override" a decision of the partnership appears, at a minimum, to restrict its ability to provide remedies otherwise available for her statutory and wrongful termination claims. It is not clear, however, whether the same language precludes the panel from *evaluating* her claims. To find for Ramos on her FEHA sex discrimination cause of action, for example, we agree with Ramos the arbitrators need to assess the reasons for the alleged adverse employment actions and decide sex was a "substantial motivating factor," but they do not necessarily have to "substitute [their] judgment for" or "override" a decision of the partnership by awarding damages to or reinstating Ramos. (See, e.g., *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232–235 [damages and reinstatement are not available to plaintiff that prevails on FEHA claim if employer proves it would have made the same decision without discrimination, but court *may* award attorney fees, declaratory and injunctive relief]; Cal. Code Regs., tit. 2, § 11009, subd. (a) ["In allegations of employment discrimination, a finding that an employer . . . has engaged in an unlawful employment practice is not dependent upon a showing of individual back pay or other compensable liability."]; see also *Moncharsh v.*

10

*Heily & Blase* (1992) 3 Cal.4th 1, 28 [arbitrator may resolve all contested issues of law and fact submitted for decision].)  In sum, the effect of the provision on the *scope* of the agreement is ambiguous, and we are unable to say " ' " ' "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers [this] dispute." ' " ' " (*Cione v. Foresters Equity Services, Inc.*, *supra*, 58 Cal.App.4th at p. 642; *Hayes Children Leasing Co. v. NCR Corp.* (1995) 37 Cal.App.4th 775, 788 ["Any ambiguity in the scope of the arbitration . . . will be resolved in favor of arbitration."].)  Given the strong policy favoring arbitration, and the controlling principle that any doubts must be construed in favor of arbitration, we conclude Ramos's claims "relate to" the partnership and the Partnership Agreement, and therefore fall within the scope of the arbitration provision.

## C.  *Enforceability*

Having found Ramos's claims fall within the broad scope of the parties' arbitration agreement, we now turn to whether the agreement is enforceable under California law.

In *Armendariz,* the California Supreme Court considered the enforceability of a mandatory employment arbitration agreement with respect to the employees' statutory discrimination and wrongful termination in violation of public policy claims. (*Armendariz, supra,* 24 Cal.4th at p. 90.)  Our high court concluded such claims are arbitrable if the arbitration agreement meets certain minimum requirements and is not so one-sided as to be unconscionable.  (*Id.* at pp. 90–91.)

### 1.  *Armendariz* is Good Law

At the outset, we reject Winston's argument that *Armendariz* is no longer good law and has been invalidated by the United States Supreme Court's decision in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333 (*Concepcion*).[3]  *Concepcion* held the

---

[3] We note to the extent Winston is trying to argue the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) preempts rules established in *Armendariz,* it has not shown the FAA applies here.

FAA preempts California's "*Discover Bank* rule,"[4] which determined class action waivers in arbitration clauses were substantively unconscionable as a matter of law. (*Concepcion*, at pp. 340, 352.)  Since *Concepcion* was decided, the California Supreme Court has reaffirmed the validity of *Armendariz* multiple times.  (See *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 962–963; *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 910; *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1169.)

Winston cites no applicable authority holding that *Armendariz* has been invalidated on any ground other than that stated in *Concepcion*.  Winston recently filed a supplemental brief regarding the United States Supreme Court decision in *Epic Systems Corp. v. Lewis* (May 21, 2018, No. 16-285) ___ U.S. ___ [138 S.Ct. 1612], but that case concerned whether class and collective action waivers in arbitration agreements violated the National Labor Relations Act, and it did not mention *Armendariz*.  Indeed, *Epic Systems* explicitly reaffirmed, like *Concepcion* before it, that the FAA does not preempt the invalidation of arbitration agreements by " ' "generally applicable contract defenses, such as fraud, duress, or unconscionability." ' " (*Epic Systems,* at p. 1622; *Concepcion*, *supra*, 563 U.S. at p. 339; see *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1150 [concluding unconscionability analysis remains applicable to arbitration clauses in employment contracts post-*Concepcion*].)  Because *Armendariz* remains controlling law, we are bound by it.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

### 2. *Armendariz* Governs Our Analysis

In *Armendariz,* the California Supreme Court held mandatory employment contracts that require employees to waive their rights to bring statutory discrimination claims under FEHA and related claims for wrongful termination in violation of public policy are unlawful.  (*Armendariz, supra,* 24 Cal.4th at pp. 100–101.)  "[A]n arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA."  (*Id.* at p. 101.)

---

[4] *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148.

The parties strongly disagree whether *Armendariz* applies to this case. Winston contends it does not, because Ramos was a partner, not an employee, and *Armendariz* applies only to mandatory employment arbitration agreements, not the Partnership Agreement Ramos signed. Ramos, on the other hand, argues her "Income Partner" title was just that—a title—and urges us to rely on the Supreme Court's opinion in *Clackamas Gastroenterology Associates, P.C. v. Wells* (2003) 538 U.S. 440 (*Clackamas*)[5] to conclude she was an employee who lacked the requisite control to be an employer. Accordingly, Ramos asserts, the mandatory fairness and unconscionability requirements set forth in *Armendariz* apply—and were not met—in this case.

We find it unnecessary to resolve the question of whether Ramos was an employee in deciding whether the parties' arbitration agreement is enforceable.[6] We nonetheless conclude *Armendariz* should guide our arbitrability determination for two reasons: first, because the claims Ramos asserts in this lawsuit encompass the statutory rights *Armendariz* held are unwaivable; and second, because regardless of whether Ramos is an employee under a *Clackamas* analysis, the record demonstrates Winston was in a superior bargaining position vis-à-vis Ramos akin to that of an employer-employee relationship, and there is no evidence in this record that Ramos had an opportunity to negotiate the arbitration provision.

_____

[5] In *Clackamas,* the United States Supreme Court outlined a six-factor test, based on Equal Employment Opportunity Commission guidelines, to determine whether shareholder-directors of a medical professional corporation were " 'proprietors' " or "employees" under the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.). (*Clackamas*, *supra*, 538 U.S. at pp. 446–450.) The court explained "the common-law element of control [was] the principal guidepost" in resolving that question. (*Id.* at p. 448.)

[6] Indeed, it may be inappropriate to do so. Though no party briefed this issue, whether Ramos is an employee goes to the heart of this lawsuit and the validity of her FEHA and related employment claims. In deciding arbitrability, a court does not resolve the merits of the underlying claims. (See, e.g. *AT&T Technologies v. Communications Workers* (1986) 475 U.S. 643, 649 ["in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims"].)

As Winston vigorously asserts, and as we concluded above, the arbitration agreement in the Partnership Agreement Ramos signed when she began work at Winston required her to arbitrate her statutory employment claims. "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." (*Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 628; *Armendariz, supra,* 24 Cal.4th at pp. 98–99.) Our Supreme Court explained that statement is "as much prescriptive as it is descriptive. That is, it sets a standard by which arbitration agreements and practices are to be measured, and disallows forms of arbitration that in fact compel claimants to forfeit substantive statutory rights." (*Armendariz*, at pp. 99–100.) Based on that principle of nonwaivability, the *Armendariz* court adopted "five minimum requirements for the lawful arbitration of such rights." (*Id.* at p. 102.) Because Ramos seeks to vindicate such unwaivable statutory rights here, we must consider whether the parties' arbitration agreement impermissibly requires her to forfeit them.

Of course, the context in which the *Armendariz* court concluded that FEHA claimants cannot be forced to waive their statutory rights involved "an agreement by an employee to arbitrate wrongful termination or employment discrimination claims . . . which an employer imposes on a prospective or current employee as a condition of employment." (*Armendariz, supra,* 24 Cal.4th at p. 90.) In discussing unconscionability in that context, the Supreme Court explained that "in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Id.* at p. 115.) Noting that arbitration has some potential advantages for employees, the court also pointed out the disadvantages, including waiver of a right to a jury trial, limited discovery, and limited judicial review. Emphasizing that "[a]rbitration is favored in this state as a voluntary means of resolving disputes," the court explained that "[g]iven the lack of choice and the potential disadvantages that even a fair arbitration system can harbor for employees, we

14

must be particularly attuned to claims that employers with superior bargaining power have imposed one-sided, substantively unconscionable terms as part of an arbitration agreement." (*Ibid.*) The evidence here demonstrates both that Winston was in a superior bargaining position and that Ramos lacked meaningful choice with respect to the arbitration provision.

Whether or not a finder of fact ultimately agrees with Ramos's allegation she was an employee within the meaning of FEHA, the relationship between Winston and Ramos was characterized by a power imbalance analogous to that of an employer-employee relationship. The Partnership Agreement provides income partners like Ramos may be admitted to the partnership by majority vote of the capital partners, and expelled from the partnership "for any reason" upon vote by secret ballot of two-thirds of the capital partners. Further, under the Partnership Agreement, the firm was governed by an executive committee, which was charged with "the complete and sole management of the Partnership," except for certain limited matters requiring an approving vote from capital and/or income partners. Only capital partners could vote for and occupy positions on the executive committee. One of the few matters on which Ramos had the ability to vote was the admission of income partners to the partnership, which required an approving vote of a majority of all partners. Even on this issue, votes were weighted such that the votes of all capital partners would equal 75 percent of all votes cast. While it is true Ramos was highly qualified and arguably a "sought-after" attorney, the record reveals a marked power imbalance between Ramos and Winston. In sum, the parties' relationship was sufficiently similar to that of an employee-employer relationship to conclude the parties' arbitration agreement is subject to *Armendariz* requirements.

Further, as discussed in greater detail below, Ramos presented undisputed evidence she did not have an opportunity to negotiate the arbitration provision because the Partnership Agreement had been adopted by hundreds of capital partners before she joined the firm, and any modification of the Partnership Agreement required a vote of

15

two-thirds of the capital partners.[7]  (See *Armendariz, supra,* 24 Cal.4th at pp. 114–115 [employment contract was adhesive where it was imposed as condition of employment and employees had no opportunity to negotiate].)  In *Armendariz,* the court explained its endorsement of the five fairness requirements "occurs in the particular context of mandatory employment arbitration agreements, in order to ensure that such agreements are not used as a means of effectively curtailing an employee's FEHA rights."  (*Id.* at p. 103, fn. 8.)  The court distinguished agreements formed after disputes have arisen, noting, "In those cases, employees are free to determine what trade-offs between arbitral efficiency and formal procedural protections best safeguard their statutory rights.  Absent such *freely negotiated agreements*, it is for the courts to ensure that the arbitration forum imposed on an employee is sufficient to vindicate his or her rights under the FEHA."  (*Ibid.*, italics added.)  Because the evidence shows that the contract requiring Ramos to arbitrate her FEHA and related claims was not freely negotiated, we must evaluate it under the *Armendariz* framework.

We also note this is not the first time our courts have employed *Armendariz* requirements to FEHA claims outside the employer-employee context.  In *Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1249–1250 (*Wherry*), for example, the court concluded an arbitration agreement between salespersons engaged as independent contractors and a real estate brokerage firm was substantively unconscionable under *Armendariz.*  In affirming the trial court's refusal to compel arbitration of the

---

[7] We will not consider Winston's argument, raised for the first time at oral argument, that the arbitration agreement was not a "take-it-or-leave-it" agreement because Ramos had 30 days to sign it and was given the opportunity to talk with another attorney about it.  (See, e.g., *Collins v. Navistar, Inc.* (2013) 214 Cal.App.4th 1486, 1508, fn. 8 [arguments may not be raised for the first time at oral argument].)  Indeed, in its return, Winston appears to concede Ramos did not have a meaningful opportunity to negotiate, stating, "even if the Arbitration Provision was to some extent adhesive in that Ramos did not have the opportunity to negotiate the terms of that provision, that fact alone is insufficient to establish the oppressiveness necessary to conclude the provision is procedurally unconscionable."  In any event, the fact that Ramos had 30 days to sign the Partnership Agreement and was able to talk with someone about it does not demonstrate the arbitration provision was negotiable.

salespersons' FEHA claims, the court observed the fact "[t]hat plaintiffs are independent contractors and not employees makes no difference in this context" because the "contract by which they were to work for defendants contained a mandatory arbitration provision." (*Wherry*, at p. 1249*;* see *Penilla v. Westmont Corp.* (2016) 3 Cal.App.5th 205, 221 [applying *Armendariz* to arbitration agreement between mobilehome renters and landowners where renters asserted two FEHA claims for racial discrimination and sexual harassment in housing].)  Similarly, because the Partnership Agreement Ramos signed upon joining Winston requires her to arbitrate her FEHA and related employment claims, we consider whether it passes muster under *Armendariz*.

### 3. *Armendariz* Requirements

With respect to FEHA claims, our Supreme Court has outlined certain minimum requirements which must be met to ensure the preservation of statutory rights in an arbitral forum:  (1) the agreement must provide for neutral arbitrators, (2) the agreement may not limit remedies provided under the statute, (3) there must be sufficient discovery to adequately arbitrate the employee's statutory claim, (4) there must be a written arbitration decision and judicial review sufficient to ensure the arbitrator complied with the statutory requirements, and (5) the employer must pay all costs unique to arbitration. (*Armendariz, supra,* 24 Cal.4th at p. 102; *Sonic-Calabasas A, Inc. v. Moreno, supra,* 57 Cal.4th at pp. 1130–1131.)  Ramos contends these requirements were not met in the present case.

#### a. *Neutral Arbitrators*

The parties' arbitration agreement provides the panel of three arbitrators will be chosen as follows:  "The Partnership shall select one arbitrator and the other party to the controversy shall select one arbitrator, each of whom shall be partner in a law firm headquartered in the United States and having not less than 500 lawyers.  The two arbitrators thus selected shall select a third arbitrator, who shall also be a partner in a law firm headquartered in the United States and having not less than 500 lawyers.  If the two arbitrators selected by the Partnership and by the other party to the controversy are unable to agree upon the third arbitrator within thirty (30) days after their selection, the third

17

arbitrator, satisfying the aforesaid criterion, shall be selected by the American Arbitration Association . . . ."  Ramos contends the requirement that each of the arbitrators be a partner in a law firm with no less than 500 lawyers does not provide for neutral arbitrators because those are "are precisely the demographic characteristics of the individuals accused of wrongdoing in this case."  As Winston points out, however, those are also characteristics that described Ramos herself.  Moreover, the " 'ability to choose expert adjudicators to resolve specialized disputes' " is one of the fundamental benefits of arbitration.  (*Concepcion, supra,* 563 U.S. at p. 348.)  Ramos offers no reasoned argument the provision requiring selection of arbitrators that are partners in large law firms will affect their neutrality or preclude her from obtaining a fair hearing.

### b. Limitation of Remedies

Ramos asserts the final sentence of the arbitration clause impermissibly denies her any relief on the claims brought in her complaint.  It states:  "The panel of arbitrators shall have no authority . . . to substitute its judgment for, or otherwise override the determinations of, the Partnership, or the Executive Committee or officers authorized to act on its behalf, with respect to any determination made or action committed to by such parties, *unless such action or determination violates a provision of this Agreement*."  (Italics added.)  As noted above, Ramos contends this provision is unenforceable because it precludes the finder of fact from evaluating the decisions made by members of the firm's executive committee and its agents, including the compensation committee.

As we observed previously in our discussion of the scope of the arbitration clause, the final sentence of the arbitration clause does not appear to prevent the panel of arbitrators from assessing Ramos's claims, but it does preclude the arbitrators from providing remedies that would otherwise be available in a court of law.  For example, Ramos alleges in 2016 and 2017, the compensation committee reduced her pay by 56 percent and denied her bonuses to which she was entitled.  If Ramos prevails on her statutory FEHA causes of action for sex discrimination or retaliation, or her cause of action for retaliation in violation of the Equal Pay Act, she may be entitled to a variety of remedies, including backpay, front pay, or both, reinstatement, or punitive damages.  (See

18

Cal. Code Regs., tit. 2, § 11009, subd. (a) ["Upon a finding that an employer . . . has engaged in an unlawful employment practice . . . , the complainant . . . is entitled to individual or personal relief including, but not limited to, hiring, reinstatement or upgrading, back pay . . . or other relief in furtherance of the purpose of the Act."]; *Cloud v. Casey* (1999) 76 Cal.App.4th 898, 909, 907 ["California courts are authorized to award a victim of employment discrimination all damages necessary to make the victim whole"; front pay is substitute for reinstatement in constructive discharge cases]; Lab. Code, § 1197.5, subd. (k)(2) [providing for reinstatement and damages for lost wages and work benefits in Equal Pay Act case].) To award such relief, the arbitrators would have to "substitute their judgment" for that of the decision makers and "override" the determination of the executive committee and those authorized to act on its behalf (the compensation committee) that Ramos was not entitled to compensation, reinstatement, or equivalent relief.[8] Because the alleged adverse employment actions and decisions by Winston do not violate the Partnership Agreement, however, the arbitrators' authority to provide such remedies would be constrained by the last sentence of the arbitration clause.[9] As the express language of the agreement prevents Ramos from obtaining

---

[8] Winston argues, without citation to authority or the record, that because Ramos's complaint does not seek reinstatement or injunctive relief but money damages, the arbitrators could award the relief she seeks without overriding any decision of the partnership. Ramos's complaint, however, seeks special, general, compensatory, and punitive damages, as well as "all other relief the Court deems appropriate and just." As Ramos notes, reinstatement is available under her causes of action, and front pay is a substitute for reinstatement in constructive discharge cases like this one. (See *Pollard v. E. I. du Pont de Nemours & Co.* (2001) 532 U.S. 843, 846–847 [front pay is not element of compensatory damages and may be awarded as substitute for reinstatement]; *Cloud v. Casey, supra,* 76 Cal.App.4th at p. 907.) Winston did not address this argument in its return or at oral argument.

[9] Winston also contends article XII of the Partnership Agreement requires the parties to act in accordance with duties of loyalty and care, including by "refraining from . . . intentional misconduct[] or knowing violation of the law," and thus the arbitrators could find Winston breached the Partnership Agreement by knowingly engaging in unlawful discrimination. Ramos does not assert a claim for breach of fiduciary duty, however, nor does Winston cite any legal authority in support of its argument a finding of

19

remedies available under her statutory claims, the provision is unenforceable.
(*Armendariz, supra,* 24 Cal.4th at pp. 103–104.)

In addition, under FEHA, a prevailing plaintiff is ordinarily entitled to an award of attorney fees, another statutorily authorized remedy.  (Gov. Code, § 12965, subd. (b); *Wherry*, *supra*, 192 Cal.App.4th 1242, 1249.)  Here, the parties' arbitration clause impermissibly provides each party shall recover its own attorney fees.  (*Wherry*, at p. 1249*; Armendariz, supra,* 24 Cal.4th at pp. 103–104.)

### c.  *Availability of Discovery*

Ramos argues the arbitration agreement fails to provide for discovery.  She also asserts the "complicated nature of the facts and circumstances showing multiple violations of California law and public policy cannot be fully discovered in the arbitration proceeding contemplated by the Arbitration Clause."  We disagree.

"[A] limitation on discovery is an important component of the 'simplicity, informality, and expedition of arbitration.' " (*Armendariz, supra,* 24 Cal.4th at p. 106, fn. 11.)  Though we recognize courts must balance the desire for simple discovery with an employee's need for discovery "sufficient to adequately arbitrate their statutory claim," parties are "also permitted to agree to something *less than* the full panoply of discovery provided in [the] Code of Civil Procedure." (*Id.* at pp. 106, 105.)  Further, as *Armendariz* held, "when parties agree to arbitrate statutory claims, they also implicitly agree, absent express language to the contrary, to such procedures as are necessary to vindicate that claim." (*Id.* at p. 106.)  Accordingly, we do not conclude the lack of express language in the arbitration provision regarding discovery renders the agreement unconscionable.

### d.  *Written Award*

Ramos also contends the arbitration agreement is unconscionable because it does not require a written arbitration award.  In *Armendariz,* the Supreme Court concluded "an

---

unlawful discrimination would amount to a violation of the duty of care under the Partnership Agreement.

arbitrator in a FEHA case must issue a written arbitration award that will reveal, however briefly, the essential findings and conclusions on which the award is based." (*Armendariz*, *supra*, 24 Cal.4th at p. 107.)  Ramos argues the arbitration clause is unconscionable because it is silent on the form of the award and the American Arbitration Association (AAA) commercial arbitration rules incorporated in the arbitration agreement require only that the award be "in writing," but do not require "essential findings and conclusions" or any reasoning at all.  The applicable AAA commercial arbitration rules provide, however, in relevant part:  "The arbitrator need not render a reasoned award unless the parties request such an award in writing prior to the appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate."  (American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, rule R-46(b) (Oct. 13, 2013).)  As Ramos is entitled to a reasoned award upon request, the provision is not unconscionable.  Moreover, because the agreement is silent as to the form of the award, availability of a written award is implied. (*Sanchez v. Western Pizza Enterprises, Inc.* (2009) 172 Cal.App.4th 154, 177 [where provision requiring written arbitration award is absent, term will be implied as a matter of law as part of agreement], abrogated in part on another ground in *Concepcion*, *supra*, 563 U.S. 333, as stated in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 366.)

### *e. Employer to Pay All Costs Unique to Arbitration*

The parties' arbitration agreement provides:  "Fees and other charges of the mediator, arbitrators, the CPR Institute for Dispute Resolution and the American Arbitration Association, if any, shall be shared equally by the Partnership and the other party."  Winston does not dispute this language requires Ramos to pay arbitration fees and costs that she would not have to pay if she litigated her statutory claims in court. Under *Armendariz,* this provision cannot stand.  (*Armendariz, supra,* 24 Cal.4th at pp. 110–111.)

### 4. Unconscionability

21

The doctrine of unconscionability " ' "refers to ' "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." ' " ' " (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1243 (*Baltazar*); *Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1265 (*Farrar*).)  There is both a procedural and substantive aspect of unconscionability; the former focuses on "oppression" or "surprise" due to unequal bargaining power, the latter on "overly harsh" or "one-sided" results.  (*Armendariz, supra,* 24 Cal.4th at p. 114.)

" 'Both procedural and substantive unconscionability must be present for the court to refuse to enforce a contract under the doctrine of unconscionability although " 'they need not be present in the same degree.' " [Citation.]  Essentially the court applies a sliding scale to the determination:  " '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " ' " (*Farrar, supra,* 9 Cal.App.5th at p. 1265.)  Absent conflicting evidence, the trial court's unconscionability determination is a question of law subject to de novo review. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236; *Farrar*, at p. 1265.)

### a. Procedural Unconscionability

" '[T]here are degrees of procedural unconscionability.  At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . . Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum.  [Citation.]  Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced [citation], contain a degree of procedural unconscionability even without any notable surprises, and "bear within them the clear danger of oppression and overreaching." ' " (*Baltazar*, *supra*, 62 Cal.4th at p. 1244.)  "[C]ourts must be 'particularly attuned' to this danger in the employment setting, where 'economic pressure exerted by employers on all but the most sought-after employees may be particularly acute.' " (*Ibid.*)

22

Contrary to Winston's argument, the fact Ramos was "a highly educated, highly compensated, sophisticated and 'skilled attorney,' " does not preclude her argument the agreement to arbitrate was adhesive and procedurally unconscionable. (See, e.g., *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1534 [executive had no realistic ability to modify the terms of his employment contract where it was presented on a " 'take it or leave it basis' " and every other corporate officer was required to sign identical agreement].) Winston apparently concedes the Partnership Agreement had been ratified by hundreds of capital partners before Ramos's employment began and required a vote of two-thirds of the capital partners before it could be amended. In its return, Winston did not challenge Ramos's statement that she had no opportunity to negotiate or amend any term of that agreement, or her evidence that she was presented with the Partnership Agreement the day after she began work and was told to return it, signed, within 30 days.[10] Thus, we conclude the arbitration provision is procedurally unconscionable. (See, e.g., *Ajamian v. CantorCO2e, L.P.* (2012*)* 203 Cal.App.4th 771, 796 ["The finding that the arbitration provision was part of a nonnegotiated employment agreement establishes, by itself, some degree of procedural unconscionability."].)

That said, this is also not a case where Ramos did not understand the agreement, was unaware of the arbitration provision, or was tricked into signing the contract. As our Supreme Court explained in *Baltazar*, *supra*, 62 Cal.4th 1237, though the "adhesive nature of the employment contract requires us to be 'particularly attuned' to [a party's] claim of unconscionability," we do not subject employment contracts "to the same degree of scrutiny as '[c]ontracts of adhesion that involve surprise or other sharp practices.' " (*Id.* at p. 1246; see *Farrar, supra,* 9 Cal.App.5th at pp. 1268–1269 [heightened scrutiny of arbitration provision not merited in absence of evidence of " 'oppression' " or " 'sharp practices' " on the part of the company]; *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 980–981 [low level of procedural unconscionability existed where licensed attorney

_____

[10] As noted above, Winston suggested for the first time at oral argument the agreement was not a "take-it-or-leave-it" contract because Ramos had 30 days to sign it and was told she could discuss it with one of the firm's attorneys.

23

knowingly entered employment contract with arbitration clause in exchange for generous compensation package].)  In sum, while we agree the contract was adhesive, we conclude the degree of procedural unconscionability is relatively minimal under the circumstances of this case.

### b.  Substantive Unconscionability

We have already discussed how provisions requiring Ramos to pay her own attorney fees, bear half of the costs of arbitration, and limiting the arbitrator's authority to provide relief authorized by statute violate the minimum requirements for the arbitration of unwaivable statutory claims set forth in *Armendariz.*  We find ample support in California case law for concluding such provisions are substantively unconscionable. (See, e.g., *Armendariz, supra,* 24 Cal.4th at p. 115; *Wherry, supra,* 192 Cal.App.4th at p. 1248; *Ajamian v. CantorCO2e, L.P., supra,* 203 Cal.App.4th at pp. 799–800; *Samaniego v. Empire Today, LLC, supra,* 205 Cal.App.4th at p. 1147.)

In addition to the provisions already discussed, Ramos challenges the term requiring, "Except to the extent necessary to enter judgment on any arbitral award, all aspects of the arbitration shall be maintained by the parties and the arbitrators in strict confidence."  Citing *Davis v. O'Melveny & Myers* (9th Cir. 2007) 485 F.3d 1066 (*Davis*), Ramos contends that provision is unconscionable because it prevents her from gathering evidence to present her case.

In *Davis,* the parties were not permitted to disclose to anyone not directly involved in the mediation or arbitration the content of pleadings and papers, nor were they permitted to disclose that a controversy between them existed and there was a resulting mediation or arbitration.  The Ninth Circuit held the provision was unconscionably one-sided because it "would prevent an employee from contacting other employees to assist in litigating (or arbitrating) an employee's case.  An inability to mention even the existence of a claim to current or former O'Melveny employees would handicap if not stifle an employee's ability to investigate and engage in discovery.  The restrictions would also place O'Melveny 'in a far superior legal posture' by preventing plaintiffs from accessing precedent while allowing O'Melveny to learn how to negotiate

24

and litigate its contracts in the future.  [Citation.]  Strict confidentiality of all 'pleadings, papers, orders, hearings, trials, or awards in the arbitration' could also prevent others from building cases." (*Davis, supra,* 485 F.3d at p. 1078.)  Winston argues the provision at issue in *Davis* was much broader than the language used here, because it precluded any mention of even the existence of a controversy.  But the language of the confidentiality clause in this arbitration agreement is very broad, as it covers "all aspects of the arbitration," including presumably, the allegations of Ramos's complaint, the nature of the claims she is arbitrating, and the discovery process itself.  It is hard to see how she could engage in informal discovery or contact witnesses without violating the prohibition against revealing an "aspect of the arbitration."

Winston cites *Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398 (*Sanchez*) and *Woodside Homes of Cal., Inc. v. Superior Court* (2003) 107 Cal.App.4th 723, 732 (*Woodside*), in support of its argument confidentiality clauses are enforceable.  But neither of those opinions addressed Ramos's argument that a confidentiality clause like the one at issue in this case would impair her ability to engage in informal discovery in pursuit of her litigation claims.[11]

In *Zuver v. Airtouch Communications, Inc.* (2004) 153 Wn.2d 293, 299 [103 P.3d 753, 757]*,* the Washington Supreme Court addressed the enforceability of an arbitration clause in an employment contract with a confidentiality clause providing, "All arbitration proceedings, including settlements and awards, under the Agreement will be confidential."  The *Zuver* court observed the appellate court in *Woodside* considered only whether the confidentiality provision would impair the public's interest in open proceedings, concluding those concerns " 'have nothing to say about the fairness or

---

[11] Although *Sanchez* noted in passing that the trial court found the confidentiality provision at issue was unconscionable because it would " 'inhibit employees from discovering evidence from each other,' " it did not discuss why the trial court's reasoning was erroneous and relied only on a citation to *Woodside,* which was not an employment case and did not address whether such clauses unfairly restrict an employee's ability to engage in informal discovery. (*Sanchez, supra,* 224 Cal.App.4th at p. 408.)  To the extent *Sanchez* contradicts our holding, we decline to follow it.

desirability of a secrecy provision with respect to the parties themselves . . . .' " (*Zuver*, *supra*, 103 P.3d at p. 765.) Finding *Woodside* inapposite, the *Zuver* court went on to find the effect of the confidentiality clause was unfairly one-sided and substantively unconscionable. "As written, the provision hampers an employee's ability to prove a pattern of discrimination or to take advantage of findings in past arbitrations. Moreover, keeping past findings secret undermines an employee's confidence in the fairness and honesty of the arbitration process, and thus potentially discourages that employee from pursuing a valid discrimination claim." (*Zuver*, at p. 765.)

The authorities relied on by Winston do not address the practical impact the confidentiality provision at issue here has on Ramos's ability to pursue her claims. Because it requires her to keep "all aspects of the arbitration" secret, she would be in violation if she attempted to informally contact or interview any witnesses outside the formal discovery process. Further, such a limitation would not only increase Ramos's costs unnecessarily by requiring her to conduct depositions rather than informal interviews, it also defeats the purpose of using arbitration as a simpler, more time-effective forum for resolving disputes. In addition, requiring discrimination cases be kept secret unreasonably favors the employer to the detriment of employees seeking to vindicate unwaivable statutory rights and may discourage potential plaintiffs from filing discrimination cases. We therefore conclude the provision requiring all aspects of the arbitration be maintained in strict confidence is substantively unconscionable.

Ramos also contends the forum selection clause providing for arbitration in Chicago, Illinois is unconscionable. Because she lives in Albany, California and her work was based in Winston's San Francisco and Menlo Park offices, Ramos contends having to travel to Chicago would cause her to incur substantial cost, while simultaneously serving as a convenience to Winston. In cases with a contractual forum clause, however, the burden of proof is on the party resisting the forum to demonstrate the selected forum "would be unavailable or unable to accomplish substantial justice or that no rational basis exists for the choice of forum. [Citations.] Neither inconvenience nor the additional expense of litigating in the selected forum is a factor to be considered."

26

(*Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 199;
*Olinick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286, 1305 [*Armendariz* does not
preclude forum selection clauses so long as employee has adequate remedy for
discrimination claims in selected forum].)  Here, Ramos's only complaint is that
arbitration in Chicago would be inconvenient and expensive for her and more convenient
for Winston.  She does not argue her claims could not be resolved in that forum or she
would not receive substantial justice.  Accordingly, we conclude the provision requiring
that the arbitration take place in Chicago, Illinois is not substantively unconscionable.[12]

### 5. Severance

Winston argues to the extent certain clauses are unconscionable, they may be
severed, as the trial court did below.  As noted, the trial court ordered that the arbitration
be held in San Francisco, that Ramos only need pay costs she would have to pay if she
litigated her claims in court, and the arbitrators shall have the authority to award attorney
fees if Ramos is the prevailing party and attorney fees are available under her claims.  In
addition to those provisions, we have determined the restrictions on the arbitrators' power
to award remedies authorized by statute and the confidentiality provision are
unconscionable.  Although typically we would remand the matter with directions for the
trial court to exercise its discretion on severance, we do not do so here because we
conclude, as a matter of law, the arbitration agreement is unenforceable.

Where appropriate, courts have discretion to sever or limit the application of
unconscionable provisions and enforce the remainder of an arbitration agreement under
Civil Code section 1670.5, subdivision (a).[13]  In assessing severability, "Courts are to

_____

[12] Ramos also contends the fact that Winston chose to incorporate the AAA
commercial arbitration rules, rather than the AAA employment arbitration rules, into the
arbitration clause provides another reason to deny arbitration because several provisions
of the commercial arbitration rules violate the *Armendariz* requirements.  Because we
conclude the agreement is unconscionable for the reasons discussed herein, we need not
reach this claim.

[13] Civil Code section 1670.5, subdivision (a) provides:  "If the court as a matter of
law finds the contract or any clause of the contract to have been unconscionable at the

27

look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Armendariz*, *supra*, 24 Cal.4th at p. 124.)

In *Armendariz,* the court concluded two factors weighed against severance: (1) the fact that the arbitration agreement contained more than one unlawful provision; and (2) regarding lack of mutuality, the fact that there was "no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." (*Armendariz*, *supra*, 24 Cal.4th at pp. 124–125.) As to the second reason, the court concluded it "would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms," exercising an authority the court does not have. (*Id.* at p. 125 ["Code of Civil Procedure section 1281.2 authorizes the court to refuse arbitration if grounds for revocation exist, not to reform the agreement to make it lawful. Nor do courts have any such power under their inherent limited authority to reform contracts."]; *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 184–185 [unconscionable provision could not be severed where court would have to rewrite the contract which it lacked the power to do].)

Here, the trial court excised several of the provisions we have concluded are invalid under *Armendariz*, but it left in place the clause restricting the arbitrators' authority to override or substitute its judgment for that of the executive committee. By its own terms, that unique provision establishes an important limitation on the arbitrators' power to second-guess decisions by Winston's management, not only with respect to employment decisions like those at issue here, but any other claim that might be brought against the firm. We cannot strike that provision without fundamentally altering the parties' agreement regarding the scope of arbitration and the powers of the arbitrators to

time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

28

provide relief in an arbitral forum. (See, e.g., *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1516–1517 [court could not excise limitations on remedies in arbitration clause because they were "significant elements of the contract"].) Because we are not permitted to cure the deficiencies by reforming or augmenting the contract's terms, we must void the entire agreement. (*Armendariz, supra,* 24 Cal.4th at p. 125.)

At oral argument, Winston asked us to sever, under section 13.09 of the Partnership Agreement, any clauses that we conclude are unconscionable. Winston previously raised this argument regarding the severance clause only in a footnote in its informal opposition to the petition. (See *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 71 ["We may decline to address arguments made perfunctorily and exclusively in a footnote."].) In any event, Winston's willingness to have the court sever the invalid clauses is insufficient to save the agreement. As the *Armendariz* court observed, "whether an employer is willing, now that the employment relationship has ended, to allow the arbitration to be mutually applicable, or to encompass the full range of remedies, does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy. Such willingness 'can be seen, at most, as an offer to modify the contract; an offer that was never accepted. No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it.' " (*Armendariz, supra,* 24 Cal.4th at p. 125.)

In sum, the arbitration agreement as applied to Ramos's statutory and wrongful termination claims contains four unconscionable terms. The provisions requiring Ramos to pay half the costs of arbitration, pay her own attorney fees, restricting the ability of the panel of arbitrators to "override" or "substitute its judgment" for that of the partnership, and the confidentiality clause, are unconscionable and significantly inhibit Ramos's ability to pursue her unwaivable statutory claims.[14] Because we are unable to cure the

---

[14] The fact that the arbitration agreement contains four unlawful provisions also weighs against severance. (See *Armendariz, supra,* 24 Cal.4th at p. 124 [severance may be inappropriate where arbitration agreement contains more than one unlawful provision]; *Magno v. The College Network, Inc.* (2016) 1 Cal.App.5th 277, 292 [trial

29

unconscionability simply by striking these clauses, and would instead have to reform the parties' agreement in order to enforce it, we must find the agreement void as a matter of law.  (*Armendariz, supra,* 24 Cal.4th at p. 125; *Wherry*, *supra*, 192 Cal.App.4th at p. 1250.)

## III.  DISPOSITION

The petition for writ of mandate is granted.  Let a writ of mandate issue directing the superior court to vacate its order granting the motion to compel arbitration and to issue a new and different order denying the motion.  Ramos is to recover costs.

---

court did not abuse discretion in voiding entire arbitration clause where there were multiple unconscionable terms that could not be cured by severance].)

30

_____
Margulies, J.

We concur:


_____
Humes, P.J.



_____
Banke, J.

A153390
*Ramos v. Superior Court*

31

Trial Court:   Superior Court of San Francisco

Trial Judge:   Hon. John Stewart

Counsel:

Duckworth Peters Lebowitz Olivier; Law Office of Noah D. Lebowitz, Noah D. Lebowitz for Petitioner.

No appearance for  Respondent.

Orrick, Herrington & Sutcliffe, Lynne C. Hermle, Jessica R. Perry and Alexandra Pavlidakis for Real Party in Interest.